UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DIETER M. HUGEL                                    CIVIL ACTION

VERSUS                                             NO. 09-4215

SOUTHEAST LOUISIANA FLOOD PROTECTION               SECTION "B"(3)
AUTHORITY-EAST/ORLEANS LEVEE DISTRICT,
DIVISION OF NON-FLOOD ASSETS

ORDER AND REASONS

Before the Court is the Motion for Summary Judgment filed by Defendants, Southeast Louisiana Flood Protection Authority – East ("SLFPA") and Orleans Levee District, Division of Non-Flood Assets ("Orleans Levee District")[1] (Rec. Doc. No. 45) and related briefing (Rec. Doc. Nos. 68, 74, 78, 91, 93, 94, 95).Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's action is **DISMISSED** with prejudice.

Plaintiff Hugel held a boat-slip lease at the Orleans Marina at Lake Pontchartrain. (Rec. Doc. No. 45-1 at 2-3). This lease initially carried a rental price based on the water bottom and land of the particular boat-slip. (Rec. Doc. No. 68 at 1). Under the lease terms, lessees could build and maintain improvements on that property, such as boathouses, subject to a

---

[1] Although Defendants are named as "Southeast Louisiana Flood Protection Authority – East / Orleans Levee District, Division of Non-Flood Assets," and the parties' manner of reference at times suggests a single defendant, two defendants in fact appear before the Court in this matter. (Rec. Doc. No. 45 at 1); (Rec. Doc. No. 68 at 1). Defendants' counsel distinguishes between the two separate defendants in additional documents. (Rec. Doc. No. 8-1 at 1); (Rec. Doc. No. 74 at 5).

reversionary clause which gave ownership of the improvements to the lessor at the expiration or termination of the lease. *Id.* at 18.   Plaintiff built and maintained a boathouse on his lease. *Id.* at 1-2.

Many of the marina leases, including Plaintiff's, had an expiration date of 2006 or 2007.   (Rec. Doc. No. 45-1 at 2-3). In 1994 and again in 1996, as this date approached, the lessees received offers from the Orleans Levee District to extend their leases.  (Rec. Doc. No. 68 at 2-3).

In response to the offer in 1994, only six lessees extended their leases.   *Id.* at 2.   Plaintiff and several other lessees responded to a similar offer in 1996.   *Id.*   Both of these offers contained language that rental terms would be determined in the future, but did not contain prices or the calculations to determine price.  (Rec. Doc. No. 45-1 at 4).

The Orleans Levee District, after receiving recommendations from their legal and real estate consultants, as well as the opinion of the Attorney General that the improvements must be factored into the rent price of the lease extensions or future new lease agreements, adopted a resolution in September of 2000 stating that the improvements would be part of the rental price calculation.   Rec. Doc. No. 45-12. In November of 2000, the Orleans Levee District sent a letter to the lessees noting that they would either need to sign the extensions or a new thirty

year lease, both referencing the resolution to describe the calculation of the rental price. (Rec. Doc. No. 45-1 at 16; Rec. Doc. No. 45-13). Litigation immediately followed.[2] (Rec. Doc. No. 68 at 3).

The lessees signing the 1996 extension pointed out that the 1994 respondents were required only to pay a rental price based on land and water bottom, whereas the 1996 respondents had the improvements factored into the price as well. *Id.;* (Rec. Doc. No. 45-1 at 4). This issue was among those brought in a state court action entitled *Adams v. Bd. of Com'rs for Orleans Levee Dist.*, 966 So. 2d 660 (La. App. 4th 2007). In brief, the *Adams* court found that the 1994 respondents, unlike the 1996 respondents, signed a counteroffer accepted by the Orleans Levee District based on a letter including actual prices sent on their behalf, and that neither the Orleans Levee District's altering of the rental terms nor the reversionary clause violated the plaintiffs' state or federal constitutional rights. *Id.*

Following the conclusion of litigation in state court, another Orleans Levee District denial to reconsider the rental terms, and the receipt of a letter informing Plaintiff that he would have to sign or be evicted, Plaintiff signed a new lease on June 9, 2008 that became effective on July 1, 2008. (Rec. Doc.

---

[2] The validity of the 1994 lease extensions formed the basis of the case *Fourroux v. Bd. of Com'rs for Orleans Levee Dist.*, 837 So. 2d 698 (La. App. 4th 2003).

No. 68 at 7, 12).  Plaintiff then filed the current complaint on July 1, 2009.  (Rec. Doc. No. 1).

This complaint appears before the court on remand from the Fifth Circuit.  *Hugel v. Se. Louisiana Flood Prot. Auth.*, 429 F. App'x 364, 365 (5th Cir. 2011).  The Fifth Circuit reversed a finding of *res judicata* on Plaintiff's claim under 42 U.S.C. § 1983, holding that a misconstrual of Plaintiff's claim and the lack of clear, unequivocal information as to whether the 1983 claim existed at the time of final judgment in the state action, precluded such a finding at that time.  *Id.*

Defendants contend that Plaintiff's complaint fails for the following three reasons: (1) SLFPA is not a proper defendant to this action; (2) Plaintiff's complaint has prescribed; and, (3) as reversion had occurred prior to the rental price increase, which forms the basis of Plaintiff's action, no "taking" could have occurred, and the rental rates were proper.

## I. Standard of Review

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict

for the nonmovant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, (1986). The moving party has the burden of showing there is no genuine issue of material fact, but may discharge this burden by showing the absence of evidence necessary to support an essential element of the nonmoving party's case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). To oppose a motion for summary judgment, "the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that there is a general issue of material fact," *Celotex Corp.,* at 321-22. In other words, the nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Webb,* 139 F.3d at 536. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

## II. Prescription

Defendants contend that Plaintiff's Section 1983 action has prescribed either as a tort action subject to a one year

liberative prescription.(Rec. Doc. No. 45-1 at 12-14). Plaintiff contends that the proper prescriptive period is three years, as an action for inverse condemnation (Rec. Doc. No. 74 at 2-3) or two years, as an action for damage to a leasehold estate (Rec. Doc. No. 89 at 13).  Finding that Plaintiff had notice since 2000 of the formulation of the higher rental terms, the alleged injury, this action has prescribed under any prescriptive period, as Plaintiff did not file the present complaint until 2009.  No genuine issue of material fact to the contrary exists on this point.

     A court considering a claim under 42 U.S.C. § 1983 will look to the individual state's statute of limitations for general personal injury actions to determine whether an action is time-barred.  *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (clarifying the broad statement of *Wilson v. Garcia*, 471 U.S. 261 (1985) that one should look to the analogous state statute of limitations for application to the Section 1983 action).  This policy requires settling on one statute of limitations for all Section 1983 actions, regardless of the underlying action or theory.  *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 124 (2005). In Louisiana, the federal takings claim has been recognized as most analogous to the tort of condemnation, and thus all Section 1983 actions are subject to a one year statute of limitations. *Epes v. City of Bossier City*, 979 F.2d 1534 (5th Cir. 1992).

Thus, Plaintiff's arguments that his takings claim is based on alternate theories of inverse condemnation or damage to leasehold must fail. Indeed, not only are those theories less analogous than condemnation, but neither inverse condemnation, which involves land taken by governmental or private entities without appropriation, (La. R.S. 13:5111) nor damage to leasehold, which involves physical damage to leased property (La. R.S. 9:5624, *Avenal v. State*, 03-3521 (La. 10/19/04), 886 So.2d 1085, and *State through Dept. of Transp. & Development v. Chambers Inv. Co., Inc.* 595 So.2d 598 (La. 1992)), even applies to the facts of this case.

Thus, in Louisiana, La. C.C. art. 3492 (2012) provides a one year period as the controlling statute of limitations, or prescriptive period, applicable to all Section 1983 actions. *Elzy v. Roberson*, 868 F.2d 793, 794-95 (5th Cir. 1989). Again, this article provides the time limit regardless of whether the injury is to a person or to property. *Epes v. City of Bossier City*, 979 F.2d 1534 (5th Cir. 1992) (applying a one year prescriptive period for actions under Section 1983 concerning a city's condemnation of private property).

Although the statute of limitations is set as the one-year prescriptive period under Louisiana law, federal law determines when the statute of limitations begins to run, that is, when the cause of action accrues. *Lavellee v. Listi*, 611 F.2d 1129, 1130-

7

31 (5th Cir. 1980) (internal citations omitted).  Broadly stated, the Section 1983 action accrues when "plaintiff knows or has reason to know of the injury which is the basis of the action," or when "the plaintiff is in possession of the critical facts that he has been hurt and the defendant is involved." *Lavelle*, 611 F.2d at 1131; *Webster v. City of Amarillo*, 68 F.3d 464 (5th Cir. 1995).   The core of Plaintiff's complaint centers on the formulation of the rent terms which Plaintiff would have to pay. (Rec. Doc. No. 78 at 2). Here, the appropriating resolution of September 20, 2000, authorized the Orleans Levee District to sign amendments and new leases. (Rec. Doc. No. 95-1). Moreover, the Orleans Levee District immediately acted on the appropriating resolution to require notice from Plaintiff and other tenants no later than January 2, 2001, of their decision to accept the new terms or forfeit their lease rights (Rec. Doc. No. 95-2 and 95-3), and Plaintiff quickly responded to accept the new terms (Rec. Doc. No. 95-4).   Thus, the injury stems from the September 2000 Orleans Levee District resolution determining the formula to calculate the rent prices.

In *Epes*, the Fifth Circuit dealt with a similar issue stemming from a city's condemnation of a certain piece of property.  *Epes*, 979 F.2d at 1534.  In May of 1986, the plaintiff received a letter informing him that a recommendation to condemn his housing units had been submitted.  *Id.*  The city then issued

a condemnation order at a city council meeting on June 17, 1986, which the plaintiff unsuccessfully appealed through the state court system.  *Id.*  The court found that the injury occurred with the issuance of the condemnation order, not with the demolition, and that the subsequent appeal did not toll the Section 1983 statute of limitations.  *Id.* (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980); *Peter Henderson Oil Co. v. City of Port Arthur, Tex.*, 806 F.2d 1273 (5th Cir. 1987)); *see Duplantis v. Bonvillain*, 675 F. Supp. 331 (E.D. La. 1987).

Similarly, Orleans Levee District Resolution 02-092000 adopted on September 20, 2000, clearly set forth the method of calculation to be used for the rental rates, including that the value of the improvements would be considered.  Rec. Doc. No. 45-12.  This comprises the central issue of Plaintiff's alleged injury, and as long as Plaintiff had reason to know, the action accrues at this point.

On November 1, 2000, the Orleans Levee District sent drafts of a lease with multiple references to Resolution 02-092000 to lessees of the Orleans Marina.  Rec. Doc. No. 45-13. Not only did Plaintiff's attorney respond to this letter, thus acknowledging receipt, but also shortly thereafter several lessees, including Plaintiff, filed the state court action regarding the Orleans Levee District's ability to impose new rental terms.  *Adams*, 966 So. 2d 660.  Therefore, Plaintiff knew of the alleged injury in

early November of 2000, at the very latest, but did not file the present action until 2009.   Plaintiff's claim has prescribed unless he can show that the prescriptive period had been interrupted or suspended.

While federal law governs when the action accrues, state law governs when the time period is tolled.  *Torres v. Superintendent of Police of Puerto Rico*, 893 F.2d 404 (1st Cir. 1990).   No apparent basis exists here for the interruption or suspension of prescription, unless Plaintiff could show that the filing of the state court litigation should have such an effect.  La. C.C. art. 3462 (2012).   As noted above, subsequent appeals or litigation on the underlying cause of injury do not interrupt prescription. *See Epes*, 979 F.2d 1534; *Liberty Mut. Ins. Co. v. Brown*, 380 F.3d 793, 799 (5th Cir. 2004).   Instead, the cause of action itself must be the basis of that suit.   La. C.C. art. 3462, cmt. b. (2012).   Of course, if Plaintiff claims the *Adams* litigation should interrupt prescription, then he admits that the issue has already been litigated, not to mention existed, at the time of the state court litigation, thereby satisfying Defendants' reurging of the *res judicata* contention and allaying the concerns of the Fifth Circuit in its previous remand.   (Rec. Doc. No. 74 at 5); *Adams*, 966 So. 2d 660; *Hugel*, 429 F. App'x 364.

Plaintiff's claim under Section 1983 prescribed in early November of 2001. Furthermore, Plaintiff cannot show interruption

of this prescription period, and any such attempt would only reinforce Defendants' *res judicata* arguments.

Because the Court finds Plaintiff's claims must be dismissed as prescribed, the Defendants' other bases for the summary judgment motion need not be addressed.

New Orleans, Louisiana, this 3rd day of August, 2012.

_____
UNITED STATES DISTRICT JUDGE